IN THE UNITED STATES DISTRICT COURT

CENTRAL DIVISION, DISTRICT OF UTAH

|  | : |  |
|---|---|---|
| COLEEN GLATHAR, | : | Civil No. 2:03-CV-521 TC |
| Plaintiff, | : |  |
| vs. | : | REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART, | : |  |
| Commissioner, Social Security Administration, |  | JUDGE TENA CAMPBELL |
| Defendant. |  | MAGISTRATE JUDGE BROOKE C. WELLS |

This matter came before Magistrate Judge Brooke C. Wells pursuant to 28 U.S.C. § 636(b)(1)(B) from a referral by District Judge Tena Campbell.

The court has carefully reviewed the pleadings and has determined that oral argument would not substantially assist the court in determining Plaintiff's appeal.  For the reasons set forth below, the court concludes that the decision of the Administrative Law Judge (ALJ) is supported by substantial evidence and there is no valid basis for reversing the decision of the Commissioner.  Accordingly, the court recommends the district court deny Ms. Glathar's appeal.

**STANDARD OF REVIEW**

Review of the Commissioner's decision is limited to

determining whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.[1]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion".[2]  Evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.[3]  The court may neither re-weigh the evidence nor substitute its discretion for that of the Commissioner.[4]  Where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.[5]

## PROCEDURAL HISTORY

This is an appeal from the denial of Plaintiff-Claimants's application for Disability Insurance Benefits (DIB) under Titles II and XVIII of the Social Security Act, 42 U. S. C. §§ 401-433.

---

[1] *See Castellano v. Secretary of Health & Human Services*, 26 F.3d 1027, 1028 (10th Cir. 1994); *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); 42 U.S.C. § 405 (g); *Richardson v. Perales*, 402 U.S. 389, 402 (1971).

[2] *See Hamilton*, 961 F.2d at 1498.

[3] *See Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

[4] *See Hinkle v. Apfel*, 132 F.3d 1349, 1351 (10th Cir. 1997); *Kelly v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995).

[5] *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

(R. 432-434).[6]  Ms. Glathar applied for DIB on March 7, 2000,
alleging an inability to work since March 18, 1994.  (R. 432-
434).  Later, she amended this date to November 25, 1999.[7]  (R.
482).  The claim was denied initially and upon reconsideration.
(R. 393-394, 421-423).  On May 31, 2001, the ALJ conducted a
hearing.  (R. 92-147).  In a decision dated July 17, 2001, the
ALJ determined Ms. Glathar was not disabled within the meaning of
the Social Security Act (Act).  (R. 24-31).  Plaintiff then
appealed.

The Appeals Council received supplemental letters from
Claimant's physicians.  (R. 601-638).  This however, did not
change the decision of the Appeals Council and any additional
review of the ALJ's decision was denied on April 18, 2003.  (R.
11-12).  Thus, the ALJ's decision became the Commissioner's final
decision for purposes of judicial review.[8]

---

[6] The court uses "R." to reference the Official Record as a
whole, which includes the transcript of the ALJ's hearing.

[7] There is disagreement between the parties concerning the
filing date.  The Application for Disability Insurance Benefits
has "February 22, 2000" printed on the top of each page,
"2/24/00" is written in the claimant's hand next to the signature
on the last page and "3/7/00" is written in a box on the first
page.  (R. 432-434). The date of March 7, 2000 is referenced in
the ALJ's decision.  The ALJ was in a better position to assess
which of the dates is applicable.  Therefore, the court adopts
March 7, 2000 as the date of filing.  This is also the date
Plaintiff uses in her brief in support of petition for review.
See Brief, docket no. 8 p. 2.

[8] See 20 C. F. R. § 404.981.

3

Ms. Glathar appeals from the final decision alleging the ALJ erred at steps two, three and four of the required five-step analysis. She further alleges that the ALJ erred by failing to give her treating physicians' opinions proper weight and by finding her testimony not credible.

Finally, it is important to note that Plaintiff previously filed an application for disability benefits on February 11, 1998. (R. 148-50). This application was denied initially and upon reconsideration. (R. 147A, 147C-147E, 147B, 147G-147I). Following a hearing held on May 13, 1999, an ALJ issued a decision on November 24, 1999, finding Plaintiff not disabled within the meaning of the Act. (R. 399-406). The Appeals Council did not change the ALJ's decision and Ms. Glathar did not seek judicial review of that decision. Accordingly, the merits of that decision are not before the court.

## STATEMENT OF FACTS

### A.   Plaintiff's Statements and Testimony

Ms. Glathar was born July 28, 1955, has a high school education, and was previously employed as a cabinet assembler, door assembler and cut-off saw operator. (R. 470-477). Ms. Glathar allegedly became disabled on November 25, 1999 (as amended after her previous application was denied). Claimant alleges disability because of headaches, stress, pain in her

4

back, feet, hips, hands, shoulders, and neck; stomach and bowel problems, and depression. (R. 454).

In Claimant's description of her current employment as a wife and mother, dated February 12, 2000, she stated that she spends 1 hour a day walking, 2 hours standing, 8 to 10 hours sitting, 1 hour manipulating large objects (handling, grabbing, or grasping), and 1 hour manipulating small objects (writing, typing, or handling). (R. 474). Ms. Glathar described how she carries an approximately 5-pound basket of wash 5 to 20 feet while doing laundry, and 1 to 2 pounds of dishes 5 feet while cleaning. *Id.* She helps her three children get ready for school in the morning and makes snacks for them when they get home from school. (R. 464). In the evenings, she helps make dinner. (R. 465). Claimant watches a great deal of television through out the day, and frequently naps in a reclining chair. (R. 464-465).

Ms. Glathar goes to the store for 1 to 2 hours twice a week. (R. 465-468). Plaintiff described problems with driving because of headaches, falling down, motion sickness, and stiffness of joints. (R. 467-468). On the day of her hearing, however, she drove approximately 100 miles from Levan to Salt Lake City by herself with only one stop. (R. 103, 137).

**B.    Medical Evidence**

In the instant case, there is medical evidence in the record from three distinct time frames. First, evidence prior to

5

November 25, 1999, the date of Plaintiff's alleged onset of
disability; second, evidence between Plaintiff's alleged onset of
disability, November 25, 1999, through Plaintiff's date last
insured March 31, 2000; finally, there is evidence from after the
date Plaintiff was last insured which is March 31, 2000.

**(1). <u>Evidence Prior to November 25, 1999</u>**

In 1998, approximately 11 years prior to her alleged onset
of disability, Plaintiff was diagnosed with meningioma[9] and
underwent two surgeries. (R. 110-111, 251, 401-403). In 1997,
Plaintiff underwent a right shoulder subacromial decompression.
(R. 304-10). Prior to her alleged onset of disability, Plaintiff
was diagnosed with depression, headaches, and diffuse pain
syndrome. (R. 251-255, 311-331, 341-343, 366-385). In February
1998, Gary R. Zeluff, M.D., diagnosed claimant with "multiple
joint DJD polyarthritis." (R. 308). In July 1999, John M.
Sanders, M.D., assessed arthritis, probable fibromyalgia and
opined that her symptoms made it difficult for her to perform
physical activities and that she would not be "very employable."
(R. 387).

**(2). <u>Evidence Between November 25, 1999 and March 31, 2000</u>**

On December 28, 1999, Claimant saw Pamela L. Vincent, M.D.,

---

[9] Meningioma is a benign brain tumor consisting of neoplasm
which occurs most frequently in adults along the superior
sagittal sinus, the sphenoid ridge, or near the optic chiasm.
*See Stedman's Medical Dictionary* (27th ed. 2000).

for a neurological evaluation.  (R. 527-529).  Ms. Glathar was

taking medication for depression, hyothyroidism, and moderate to

moderately severe pain (Prozac, Synthoid and Celebrex

respectively).  (R. 528).  She complained of problems on the

right side of her body from head to toe, and headaches.  (R.

527).  Dr. Vincent reported that the claimant had "decreased

perception of touch and pinprick in the right face and arm", but

that Ms. Glathar was otherwise normal.  (R. 528-592).  Dr.

Vincent stated that the stress, anxiety and depression reported

by Claimant was likely contributing to her frequent headaches.

(R. 528).  Anaprox and Compazine were prescribed for the headache

symptoms.  *Id.*

     Dr. Vincent ordered an electroencephalogram (EEG) of the

claimant for January 4, 2000.  The results from the EEG were

normal.  (R. 526).  During a follow-up exam on January 31, 2000,

Ms. Glathar reported that the Anaprox and Companzine caused

severe diarrhea, and that she would be returning to using

Celebrex which was somewhat helpful.  *Id.*  Dr. Vincent prescribed

Depakote for the headaches and Ultram to help with the pain.  *Id.*

     On March, 3, 2000, Claimant saw Douglas R. Mower, M.D. for a

follow-up examination.  (R. 506).  Ms. Glathar reported that she

was taking Celebrex, Prozac, Synthroid and potassium, but had

ceased taking Depakote because of the side effects.  *Id.*  The

claimant said she felt that her mood was stable.  *Id.*  Dr. Mower

stated that he was going to recheck Ms. Glathar's potassium and noted that a work-up was needed for her early hypokalemia. *Id.*

**(3).  Evidence After March 31, 2000**

On April 26, 2000, Elizabeth Allen, Ph.D. performed a mental status examination and clinical interview. (R. 530-536). Dr. Allen opined that Plaintiff's anxiety symptoms were not serious enough to warrant a diagnosis of panic disorder. (R. 534). Plaintiff reported that she was able to go to movies, into stores and to the shopping mall if her family was with her. *Id.* She however, was unable to clean her house. *Id.* Plaintiff did not have suicidal thoughts. *Id.* Dr. Allen assessed adjustment disorder with mixed anxiety and depressed mood, and personality disorder NOS with avoidant/dependant features. (R. 536).

In May and October of 2000, State agency psychological consultants conducted a review form of Plaintiff's impairments. They determined that Plaintiff's mental impairments from her alleged onset of disability date through her date last insured, caused slight restriction of activities of daily living, moderate difficulties in maintaining social functioning, and seldom caused deficiencies of concentration, persistence, or pace. (R. 551-559).

In May 2001, Nita Weber, D.O., completed a functional capacity questionnaire at the request of Plaintiff's attorney. (R. 574-577). Dr. Weber indicated she had treated Plaintiff

8

twice and had diagnosed Plaintiff with severe myalgia. (R. 575).
Plaintiff's symptoms included severe muscle pain, arm and hand
tremors, problematic varicose veins, diarrhea, and skin lesions.
Dr. Weber concluded Plaintiff needed a job which permitted her to
shift positions, take 4-8 breaks a day, and gave assistance with
walking. (R. 576). According to Dr. Weber Plaintiff was
significantly limited in the ability to stoop, crouch, and
perform repetitive reaching, handling or fingering and could lift
and carry no more than 10 pounds occasionally. *Id.* Dr. Weber
opined that Plaintiff would likely be absent from work more than
four times a month. (R. 577). Dr. Weber also opined that
Plaintiff was incapable of even "low stress" jobs and that her
impairments were expected to last at least 12 months. (R. 584).

## C.  **Vocational Expert's Testimony**

The ALJ received testimony from Kristy Farnsworth, Ph.D, a
vocational expert. Dr. Farnsworth testified at the hearing
following review of the exhibits relating to Ms. Glathar's past
work, and after hearing Claimant's testimony. (R. 139-140).

Dr. Farnsworth was asked to assume a hypothetical individual
who is 44 years old with a high school education and with
vocational characteristics similar to Claimant's. (R. 140). Dr.
Farnsworth was then asked to assume the individual had previous
work experience including the following medium exertional skilled
jobs: cabinet assembler, door assembler and cut-off saw operator.

9

*Id.*

First, the ALJ asked Dr. Farnsworth to assume that the hypothetical individual had a residual functional capacity (RFC) with no exertional or other physical limitations; a mild impairment in maintaining concentration and interacting with the public; and a moderate impairment remembering, understanding, setting realistic goals, and making plans independent of others. (R. 141). Dr. Farnsworth testified that such an individual could perform all of Claimant's past jobs. (R. 141-142).

Second, the ALJ asked Dr. Farnsworth to consider a scenario where the hypothetical individual had more limitations. These included a RFC with physical limitations of lifting no more than 10 pounds occasionally with lighter amounts more frequently; standing or walking for up to 2 hours in an 8 hour work day; and the ability to sit or stand at will during the course of the day. (R. 142). In essence, this individual would be limited to sedentary exertion work activity. (R. 30). The ALJ asked if there were any occupations that such an individual could perform. *Id.* Dr. Farnsworth listed three occupations in the national economy that such an individual could perform, dowel inspector, final assembler, and surveillance systems monitor. (R. 142-143).

The ALJ then asked if such jobs would allow for an employee to recline or lie down. Dr. Farnsworth testified that the most an employee could lie down would be an hour and a half, and that

10

if more time was needed, then all jobs would be ruled out. Dr.
Farnsworth also stated that absenteeism of more than twice a
month would also rule out all jobs. The ALJ then asked if the
hypothetical individual's ability to perform any jobs would be
prohibited if their mental limitations were raised to the marked
level. (R. 145). Dr. Farnsworth explained that if the
individual could not maintain attention and concentration for
long periods of time, this would also rule out all jobs. (R.
146).

**D.** .**Administrative Law Judge's Decision**

In his decision, the ALJ found that Ms. Glathar had not
engaged in substantial gainful activity since the alleged onset
of her disability. (R. 25). He further found that Ms. Glathar's
affected disorders, anxiety disorder, and headaches are severe,
but her obesity is not. (R. 26). Furthermore, Claimant's
"meningioma is not a medically determinable impairment because it
was not symptomatic prior to March 31, 2000, the date she was
last insured." Id. The ALJ found "the claimant's allegations
regarding her limitations . . . not totally credible" and that
her mental impairments did not meet or equal a listed impairment.
(R. 26-27, 30). Ultimately, the ALJ found that "the claimant
retains the residual functional capacity to perform a full range
of exertional work activities" and was able to perform her past
relevant work  (R. 28-30).

11

The ALJ also considered Plaintiff under a much more limited capacity, confining her to sedentary exertional work activity. (R. 30). In the alternative, the ALJ found that even under this framework, Ms. Glathar could perform a significant number of jobs available in the national economy. (R. 31). Therefore, Claimant was not under a disability as defined in the Act. *Id.*

## DISCUSSION

To determine whether an individual suffers from a disability under the regulation, the ALJ must conduct a sequential five-step evaluation.[10] The burden of proof lies with a claimant as to steps one through three; at step four and five the burden shifts to the Commissioner.

In the first two steps, the ALJ determines whether a claimant has engaged in substantial gainful activity, and whether they have a "severe" impairment.[11] If the claimant has satisfied the first two requirements, the evaluation moves on to step three, a determination of whether the claimant's impairment meets or equals a disability described in the List of Impairments ("Listing").[12] If the ALJ determines the claimant has an impairment which meets or equals a Listing, the ALJ must conclude

---

[10] *See* 20 C. F. R. § 404.1520 (a) - (f).

[11] *See* 20 C. F. R. § 416.920 (d).

[12] *See* 20 C. F. R. § 416.920 (d).

12

that the claimant is disabled.  If the claimant does not meet or equal a Listing, the evaluation moves on to steps four and five during which an assessment is made of the claimant's residual functional capacity.[13]  At step four, it is determined whether the claimant can perform her past work.  If the claimant can perform her past work then she is not disabled as defined by the Social Security Act.  If the claimant cannot perform their past work, the evaluation moves on the step five.  At step five the ALJ determines whether the claimant can perform other work that is available in the national economy.  The claimant must be found disabled if there is no other work that she can perform.[14]  On the other hand, if there is work which the claimant can perform, and such work is available in significant numbers within the national economy, the claimant is not disabled and not eligible for benefits.[15]

In making the five-step sequential evaluation of Ms. Glathar, the ALJ found as follows: at step one, Ms. Glathar had not engaged in any substantial gainful activity since the alleged onset of disability.  (R. 30).  At step two, the ALJ determined that Ms. Glathar's affective disorders, anxiety disorder, and headaches were severe, but that her obesity was not.  (R. 26).

---

[13] *See* 20 C. F. R. §§ 416.920 (e) and 416.920 (f).

[14] *See* 20 C. F. R. § 416.920 (d).

[15] *See* 20 C. F. R.. § 414.920 (f).

The ALJ, further found that Ms. Glathar's "meningioma is not a
medically determinable impairment because it was not symptomatic
prior to March 31, 2000, the date she was last insured." *Id.*
Next, at step three the ALJ found that Claimant's impairments did
not meet or "medically equal" one of the listed impairments. (R.
26, 30). Furthermore, the ALJ found that Ms. Glathar's
allegations concerning her impairments were not totally credible.
(R. 27, 30). At step four, under a higher RFC, the ALJ found Ms.
Glathar capable of performing her past work. Finally, in the
alternative, the ALJ found that even if Ms. Glathar could only
perform sedentary work, there were a substantial number of jobs
in the national economy that she could perform. (R. 30-31). Ms.
Glathar, therefore, was not disabled. (R. 31).

Claimant alleges the ALJ erred by failing to give proper
weight to the opinions of her treating physicians. The ALJ also
erred by finding her allegations regarding her limitations not
totally credible. Claimant challenges the decision of the ALJ at
steps two, three, and four of the required sequential analysis.[16]

At the outset of the court's analysis of Plaintiff's case,

---

[16] In the introduction to the argument section of her brief,
Claimant also disputes the ALJ's findings at step five of the
sequential analysis. However, in the body of her brief, Claimant
fails to address any alleged errors at step five. *See* Pla.'s
Brief p. 13. Given this, the court concludes that Claimant must
have abandoned these arguments. The court will not supply
factual allegations, case law, or construct legal theories on her
behalf. *See Whitney v. New Mexico*, 113 F.3d 1179, 1173-74 (10th
Cir. 1997).

14

the court wishes to note the importance of the principle of *res
judicata*. In essence, *res judicata* prevents a party from
relitigating in a subsequent action those claims, demands, or
causes of action that have been previously decided by a court on
the merits. This doctrine is not always applied rigidly to
disability determinations but it can still have an important
impact in certain cases. *See Fair v. Bowen*, 885 F.2d 597, 600
(9th Cir. 1989) (stating that *res judicata* prevents the plaintiff
from claiming disability for a period within a previous final
decision). The court finds that this doctrine does apply to the
instant case. Plaintiff must establish that she meets the tests
of disability after November 25, 1999, her alleged date of
disability and before March 31, 2000, the date she was last
insured under the Social Security Act. *See Potter v. Secretary
of Health & Human Servs.*, 905 F.2d 1346, 1347 (10th Cir.) (per
curiam) (stating that the claimant must show disability prior to
the last insured date under the Social Security Act).

Accordingly, it is not enough that Plaintiff's impairments
were diagnosed prior to her date last insured, "the relevant
analysis is whether [Plaintiff] was actually disabled prior to
the expiration of [her] insured status." *Id.* at 1348-49. "A
retrospective diagnosis without evidence of actual disability is
insufficient." *Id.* at 1349.

## A.    Treating Physician Rule

15

First, Claimant argues that the ALJ erred by not giving proper weight to the physicians' opinions based on the treating physician rule. Treating physicians' opinions are binding on the ALJ unless they are contradicted by substantial evidence to the contrary. *See Hintz v. Chater*, 913 F. Supp. 1486, 1492 (D. Kan. 1996). For an opinion to be given controlling weight it must be from an "acceptable source" (20 C.F.R. 404.1513), a "treating source" (20 C.F.R. 404.1502), "well supported" by medically-acceptable clinical and laboratory evidence in the record (Social Security Ruling (SSR) 96-2p), and not concern an issue reserved for the Commissioner. *See* SSR 96-5p. A treating physician's opinion is entitled to great weight because it "reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996).[17]

In support of her argument that the ALJ improperly assessed the opinions of her treating physicians, Claimant relies largely on the opinions of doctors and state agency reviewing physicians which worked with Plaintiff either before the prior decision dated November 24, 1999, or after her date last insured, March 31, 2000. Claimant directs the court to Dr. Gary Zeluff's

---

[17] *See Velasquez v. Apfel*, 28 F. Supp. 2d 1285, 1287 (D. Colo. 1998) (stating that since the treating doctor had followed the claimant for many years, he was in a superior position to evaluate the claimant's restriction and accordingly should have been afforded special weight).

16

reports dated March 13, 1998 and February 6, 1998 (R. 308, 309);

Dr. John Sanders' report dated July 20, 1999 (R. 386, 387); and

Dr. Brent Pratley's reports dated May 5, 1998 and June 4, 1998

(R. 330, 337).  For example, Claimant uses the report of Dr.

Sanders in which Dr. Sanders states "[s]he certainly is not very

employable to say the least" in support of her argument.  (R.

387).  Although these reports appear to support Plaintiff's

position, the court finds they do little to meet Plaintiff's

burden of establishing disability between November 25, 1999 and

March 31, 2000.  *See Potter*, 905 F.2d at 1347.  In the court's

view, these reports were more important in Plaintiff's first

application for disability because they occurred before

Plaintiff's alleged disability date in the instant case.

However, regardless of their probative value in the instant case,

the court notes that the ALJ did consider them as part of the

record.

In an attempt to bolster her position that she was disabled

within the relevant time frame, Plaintiff also directs the court

to the opinions of Dr. Nita B. Weber.  Plaintiff argues that Dr.

Weber "saw Ms. Glathar for her meningioma and right-side

problems, conditions which have caused Ms. Glathar problems

previous to her date last insured."  Pla.'s Mem. in Supp. p. 15.

Plaintiff then goes on to cite *Adams v. Charter*, 93 F.3d 712, 714

(10th Cir. 1996), for the proposition that "[w]hile a treating

17

physician may provide a retrospective diagnosis of a claimant's condition, a retrospective diagnosis without evidence of actual disability is insufficient." *Id.* (citing *Colman v. Charter*, 58 F.3d 577 (10th Cir. 1995). Specifically, Plaintiff argues that the ALJ "simply said Dr. Weber's information was to be considered as part of the totality of the record, and then did not consider it at all." Pla.'s Mem. in Supp. p. 15. The court disagrees.

The ALJ states that "Dr. Weber had not seen [Ms. Glathar] prior to March 31, 2000, the date she was last insured [and therefore,] her residual functional capacity questionnaire could not reasonably relate to limitations prior to that date." (R. 28). The ALJ goes on to state that although Dr. Weber's opinions are not entitled to controlling weight, they are not to be summarily dismissed either but considered as part of the "totality of the medical record." (R. 28). Finally, the ALJ specifically determined that Claimant's "meningioma is not a medically determinable impairment because it was not symptomatic prior to March 31, 2000, the date she was last insured." (R. 26).

The court finds the ALJ did not err in discounting the opinions of Claimant's physicians, including the opinions of Dr. Weber. The ALJ considered Ms. Glathar's doctor's opinions in relation to the appropriate time frame November 25, 1999 to March 31, 2000. *See Potter*, 905 F.2d at 1347. In fact, the ALJ may

18

have gone too far in considering evidence that was part of a
prior decision in violation of the principles of *res judicata*.
*See Fair v. Bowen*, 885 F.2d at 600.   Irregardless, the court
finds that there is no support for Plaintiff's argument in the
record.   Although Plaintiff suggests she was experiencing a
reoccurrence of meningioma which Dr. Weber was treating, one
important fact remains which the ALJ points to in his decision.
(R. 26).   There is no medical or non-medical evidence indicating
that Plaintiff's condition was of a disabling nature as defined
by the Act within the relevant time frame.   "[A] retrospective
diagnosis without evidence of actual disability is insufficient."
*Adams*, 93 F.3d at 714.

Finally, Dr. Weber's opinion that he was not personally
aware of any jobs that Ms. Glathar could perform with her
limitations is an opinion on an issue reserved for the
Commissioner.   A physician's job is to consider the limitations
of a patient and not to act as a career counselor.   It is
irrelevant whether Dr. Weber is aware of any occupations that Ms.
Glathar could pursue. The Court can only give anecdotal weight to
a non-medical opinion such as this by Dr. Weber.

**B.   Claimant's Credibility**

The ALJ found Claimant not to be fully credible as to her
limitations.   "Credibility is the province of the ALJ."   *Hamilton
v. Secretary of Health & Human Services*, 961 F.2d 1495, 1499

(10th Cir. 1992). However, the credibility determination must be supported by substantial evidence. *See Kepler v. Chater*, 68 F. 3d 387, 391 (10th Cir. 1995). A reviewing court should "generally treat credibility determinations made by an ALJ as a finding upon review" where, the ALJ has given specific, legitimate reasons for disbelieving the claimant's testimony. *Gossett v. Bowen*, 862 F. 2d 802, 807 (10th Cir. 1988). Nonetheless, the ability of a claimant to care for herself, drive, perform housework, attend social activities, and do shopping does not, per se, disprove disability. *See Biri v. Apfel*, 4 F. Supp. 2d 1276, 1279 (D. Kan. 1998); *Pinnt v. Chater*, 988 F. Supp. 1354, 1359 (D. Colo. 1997), (citing 20 C.F.R. §§ 404.1572 (c); 416.972 (c)).

In this case, the ALJ concluded that Claimant's testimony was not credible based on "the claimant's own description of her activities and life style, the degree of medical treatment required, the reports of the treating and examining practitioners, the medical history, the findings made on examination, and the claimant's assertions concerning her ability to work." (R. 27). Both parties refer to "substantial evidence" in the record that either support or undermine Claimant's credibility in essence suggesting the court make its own determination. However, the Court may not re-weigh the evidence or substitute its own discretion. *See Hinkle v. Apfel*, 132 F.3d

at 1351.  It would be helpful to a reviewing court if an ALJ
would provide more specificity concerning a claimant's
credibility than that provided in the instant case.
Nevertheless, the court finds that the ALJ's finding concerning
Plaintiff's credibility is supported by substantial evidence in
the record.  *See Kepler*, 68 F.3d at 391.  Therefore, the court
declines Plaintiff's invitation to overturn the ALJ's finding
that her allegations regarding her limitations were not totally
credible.

C.   **Step Two Claim of Error**

Claimant argues that the ALJ erred in not finding Ms.
Glathar's meningoma a severe impairment.  Plaintiff refers to
*Hawkins v. Chater* arguing that case law requires the ALJ deem an
impairment severe after a *de minimis* showing by Claimant that an
impairment is severe.  *See* 113 F.3d 1162, 1169 (10th Cir. 1997).
The *Hawkins'* court cited to *Williams v. Bowen* where that court
stated, "[i]f, on the other hand, the claimant presents medical
evidence and makes the *de minimis* showing of medical severity,
the decision maker proceeds to step three."  844 F.2d 748, 751
(10th Cir. 1988).

The ALJ found that Ms. Glathar's affective disorder, anxiety
order, and headaches were medically-determinable severe
impairments and moved on to step three of the analysis.  (R. 26).
If a severe impairment exists, the combined effects of all

21

impairments will be considered, without regard to whether any such impairment, if considered separately, would be of sufficient severity to be disabling. *See* 20 C.F.R. § 404.1523. The ALJ was not required to find all impairments were severe after a *de minumis* showing by Claimant. Accordingly, the court finds the ALJ correctly moved on to step three of the analysis and did not err in step two.

**D.   Step Three Claim of Error**

At step three, Claimant has the burden of proving her impairment or combination of impairments is "equivalent" to a listed impairment. Claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original). However, regulations 20 C.F.R. §§ 494.1526 and 416.926 require the ALJ to decide whether a claimant's impairment is medically equivalent to a listed impairment "if the medical findings are at least equal in severity and duration to the listed findings." Furthermore, medical equivalence of a listed impairment may be found when a combination of impairments are termed to be medically equivalent to any listed impairment based upon the symptoms, signs and laboratory findings for each one of the combination. *See* 20 C.F.R. § 404.1526 (a); 70 Am. Jur. 2d. *Social Security and Medicine* § 800. If at step three, a determination is made that a

22

claimant's impairment or combination of impairments is equivalent
to a listed impairment, the claimant is determined disabled
within the meaning of the Act and further analysis becomes
unnecessary.

Claimant argues that the ALJ failed to consider if Ms.
Glathar's impairments could equal another Listing impairment i.e.
other than 12.04, 12.06 and 12.08. Claimant does not indicate
what other Listing impairments that should have been considered
by the ALJ. Although Claimant disagrees, the ALJ not only found
that Ms. Glathar's impairments do not meet or equal 12.04, 12.06
or 12.08, the ALJ also found that, "the claimant's mental
impairments, considered *either singly or in combination*, do not
meet or equal the level of severity of *any* impairment contained
in Appendix 1, Subpart P, of Regulations No. 4." (R. 26)
(emphasis added). Therefore, Claimant fails to meet her burden
at step three and there is substantial evidence in the record to
support the conclusion of the ALJ.

**E.   Step Four Claim of Error**

Next, Claimant argues that the ALJ erred in finding that Ms.
Glathar could perform her past relevant work because the specific
conditions of her past employment were not considered. The ALJ
relied on the Work History Report submitted by Claimant in
determining the working conditions of Ms. Glathar's relevant past
employment. (R. 470-477). Claimant described different work

23

conditions during the hearing.  (R. 107).  Specifically, Claimant testified that she carried up to 75 pounds, although in the report she indicated it was only 50 pounds.

The ALJ did not err by relying on the report submitted by Claimant rather than her later testimony, particularly when Ms. Glathar stated that she could not "remember everything on there" when explaining to the ALJ why her statements where inconsistent with the forms she filled out earlier.  (R. 107).  The court finds the ALJ considered the appropriate past work conditions in making the step four determination.

**F.    Other Considerations**

Finally, the court wishes to note the alternative basis for the ALJ's decision.  The ALJ determined that in the alternative, even under a much more limited capacity of sedentary exertional work activity, Ms. Glathar could perform a significant number of jobs available in the national economy.  (R. 31).  Even if there was any reversible error in the ALJ's first basis for concluding Ms. Glathar was not disabled, a finding the court does not make, the ALJ's alternative rationale is supported by substantial evidence in the record.  This evidence includes the testimony of the vocational expert, the ALJ's consideration regarding the findings of another ALJ who determined Claimant was limited to sedentary work, Plaintiff's testimony concerning her daily activities and her medical symptoms during the relevant time

24

period. Accordingly, the court further finds that based on the ALJ's alternative rational, Plaintiff's appeal should be denied.

### RECOMMENDATION

In viewing the record as a whole, there is substantial evidence to support the ALJ's final determination based on either rational the ALJ cites for denying Plaintiff's application for disability benefits. This court, therefore, recommends that Claimant's request for reversal or remand be DENIED.

Copies of the foregoing report and recommendation are being mailed to all parties who are hereby notified of their right to object. The parties must file any objection to the Report and Recommendation within ten (10) days after receiving it. Failure to object may constitute a waiver of objection upon subsequent review.

DATED this 15th day of August, 2005.

BY THE COURT:

Brooke C. Wells
United States Magistrate Judge

25